United States District Court
For the District of Columbia

Debra C. Rowe
    Plaintiff

                        Case #: 1:11-cv-01914 RMC

    vs.

District of Columbia, et al
    David CATANIA
    Gunther Freehill
    Jeffrey Anderson
        and
    Freeman Klopott


Motion for Opposition to Defendants
    Motion to Dismiss


RECEIVED

APR - 6 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DEBRA G. ROWE

    Plaintiff,
                              **Case: 1:11 –cv-01914  RMC**

v.

DISTRICT OF COLUMBIA, *et al*,

Jeffrey Anderson

    And

Freeman Klopott

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF OPPOSITION TO DEFENDANTS MOTION TO DISMISS

Pursuant to LCvR 7(b), Plaintiff Debra G. Rowe respectfully submits the following Memorandum of Points and Authorities in Opposition to the Defendants District of Columbia, David Catania, Gunther Freehill, Freeman Klopott and Jeffrey Anderson's Motion to Dismiss all of the plaintiff's claims. The District weaves their arguments together into one fabric. The gist of the Defendant's Motion to Dismiss is that the majority of the "Plaintiff's claims are time-barred by the Statute of Limitations".

The Defendants stated in their Statement of Facts "She alleges the purportedly false and defamatory statements in question were related to her role in certain events that occurred at DOH/HAA and were made between February 2007 (Complaint ¶ 22) and February 2011 (Complaint ¶ 52)".

Plaintiff clearly stated in the complaint that "Defendant David Catania defamed her character once again on August 18, 2011 in an article titled: Audit Slams D.C.'s HIV/AIDS Grant Program written by Defendant 3 of the Washington Examiner, the following untrue statements were made regarding Plaintiff- "Many of the woes that have plagued the office occurred under former director Debra Rowe. (the plague occurred in FY 2000-FY2005 as referenced in each of HUD's letters and Plaintiff was not the director of the agency)" "The FBI has previously said it was investigating accusations of health care fraud that allegedly happened during Rowe's watch, although the U.S. Attorney's office declined to say on Tuesday whether the investigation remained open". "Rowe now works for a company - run by a former drug kingpin - that she funded as a city employee". The audit by the D.C. inspector general "is sadly just another documentation of the legacy of Debra Rowe," D.C. Councilman David Catania said in a statement to The Washington Examiner on Tuesday" (Complaint ¶ 47).

Plaintiff cites this statement substantial as the complaint is based on defamation of character, and intentional infliction of emotional distress, not wrongful dismissal nor whistleblower. The last newspaper article on behalf of the District was written August 18, 2012. If plaintiffs name is googled today the heading of Defendant David Catania's statement is posted third beneath other postings one of which was written August 31, 2011. The plaintiffs statements made pertaining to ¶¶ 1-60 were cited to show the court the background of the plaintiff's defamatory demise due to David Catania's vindictive vilification supported by Gunther Freehill.

In addition, the Office of the Attorney General fails to mention Defendant 2 who is the former supervisor of the Plaintiff and an integral participant in the plaintiff's "defamation" complaint against the District (District of Columbia Motion to Dismiss (¶1 Plaintiff's Allegations).

## I.  Summary of the District of Columbia's Dismissal Argument

1. The District of Columbia, Office of Attorney General, on behalf of the Defendant, argues its motion to dismiss based upon:

  (1) Plaintiff's constitutional claim, Count I ("Violation of 42 U.S. C. § 1983"), must be dismissed because it is based on a violation of an interest that is not protected by the Constitution. Further, the claim is time-barred as brought against the District;
  (2) Plaintiff's constitutional defamation claim, Count II ("Constitutional Defamation"), fails on the grounds that plaintiff's complaint fails to state a claim. Further, even is the claim is adequately pled, it is time-barred as brought against the District;
  (3) Plaintiff's intentional infliction of emotional distress claim against the District, Count III ("Intentional Infliction of Emotional Distress"), must fail because plaintiff failed to give the District proper notice of the claim, and the claim is time-barred;
  (4) All of the plaintiff's foregoing claims against the District should be dismissed because she has failed to exhaust her administrative remedies.

## PLAINTIFF RESPONSE TO STATEMENT OF FACTS

The District of Columbia, Office of the Attorney General, on behalf of the Defendants, stated in their Motion to Dismiss Plaintiff's Complaint "No notice of claim related to this action was filed with the Mayor of the District of Columbia as required by D. C. Code §12-309 (2001 Ed. As amended)".

It is the Plaintiff's assertion that any attempts to obtain assistance from then Mayor Adrian Fenty's office or Mayor Vincent Gray were futile.

## PLAINTIFF RESPONSE TO DEFENDANT'S  PLAINTIFF ALLEGATIONS

The Office of the Attorney General, on behalf of the District of Columbia stated that "The complaint does not specify if Catania is named in his personal capacity. The plaintiff is attaching an amendment to file the complaint against Catania personally if need be, even though he made his remarks during City Council business hours under his color of law duties. ....

The Office of the Attorney General fails to mention Defendant 2 who is the former supervisor of the Plaintiff and an integral participant in the plaintiff's "defamation" complaint against the District (District of Columbia Motion to Dismiss (¶1 Plaintiff's Allegations). The Plaintiff has a document in her possession that is unjustifiable proof that Defendant 2 willfully defamed her character and caused her "Intentional Infliction of Emotional Distress;" (Count 1) even though he knew for a fact that the allegations by him to staff and those made against the Plaintiff in the numerous newspaper articles were not true. (See Exhibit 1 Govt. Email)

In addition, there was retaliation after the Plaintiff filed the complaint. On November 18 (before the reporters were served) some of the articles were posted on line altogether under her name. (On January 9, 2012, the Plaintiff received and ORDER directing her to provide the full name and address of reporter Freeman Klopott, so service could be effected).

The posting read "posted 11 hours ago, posted 18 hours ago, posted 24 hours ago, posted 3 days ago, etc." The Plaintiff telephoned Judge Collyer's chambers to complain about it and to inquire as to what she could do and was informed that "they could not provide her with legal advice". Another attorney advised the Plaintiff that "if it's the same old stories let it go for now because if she amended her compliant to include it, the clock would have to start over". Catania's picture is on one of the articles recently posted and has been on others.

The Defendant District of Columbia filed a Motion to Quash Plaintiff's Proof of Service on December 29, 2011, yet they telephoned her during the month of January requesting an extension of time to respond to her complaint even though they were not as they stated in their motion "effectively served". From January 6 thru 20 2012 David Catania's General Council attempted to have the Plaintiff serve David Catania in person at his City Council office. (See exhibit 2 V.David Zvenyach's emails)

The Defendants stated that "to show she is entitled to relief, plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements cause of action." Bell Atl.

Corp v. Twombly. It is the Plaintiff's response that at this stage in the proceedings there has been no discovery and upon information and belief she asserts that all of the allegations are true and she can prove them. (for beginners, see exhibit 1)

The plaintiff representing herself *pro se* during her research found that in the United States such accusations upon being deemed as true by the courts, are punishable by law. Typically speaking, lawsuits involving defamation of character are made to seek compensation for any damages incurred by derogatory and false statements made by another individual or party (Avlaw, us Joseph Lamonica, Esq). In this case the Plaintiff has not been hired for any position that she has applied for the past four (4) years due to newspaper articles written on behalf of the defendants (2008-2011) slandering the plaintiff. She has suffered both physical and emotional distress. (Complaint ¶52)

## PLAINTIFF RESPONSE TO STANDARD OF REVIEW

I.  12(b)(6)

The Defendants state: "A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted where plaintiff's complaint fails to state a basis upon which relief may be granted"

Again it is the Plaintiff's response that at this stage in the proceedings there has been no discovery and upon information and belief she asserts that all of the allegations are true and she has unjustifiable (on the defendant's part) proof of them. The most damaging newspaper articles written with slander and defamation of the Plaintiff's character allege the she approved HIV Housing for Persons with HIV/AIDS (HOPWA) for strip club to be built in the District of Columbia. The Plaintiff deems it necessary because of the depth of the District's Motion to Dismiss with their attorney expertise to provide one (1) piece of evidence of proof prior to discovery. (see exhibit 1)

II.  12(b)(6)

Again it is the Plaintiff's response that at this stage in the proceedings there has been no discovery and upon information and belief she asserts that all of the allegations are true and she has unjustifiable (on the defendant's part) proof of them.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ARGUMENT

### A.  Response to Plaintiff's claim is based on a violation of an interest not protected by the Constitution

The defendants stated "here, plaintiff attempts to allege that defendants violated her rights under 42 U.S.C. § 1983 by depriving her " a forum necessary to address any allegations of impropriety based on race and background". (Complaint ¶ 62.) Plaintiff appears to allege that

4

being deprived of an opportunity to defend her "reputation" by addressing alleged "impropriety" constitutes a violation of her due process rights.

It is the Plaintiff's assertion that she was denied of a forum to properly address the allegations against her character based on her race and background. First, and foremost, upon information and belief, David Catania stated to someone that "he would not have no nigga ex-con over this amount of money" In addition, whenever there were allegations of impropriety regarding other community based housing providers-especially his beloved Whitman Walker Clinic, he would demand and schedule a City Council Oversight Hearing or intervene in any matter by telephoning or emailing the HIV/AIDS Administration to micromanage any discussion of improprieties, allegations, or other matters (for example the double-billing of on million dollars that the city had to repay on behalf of the clinic). There were such hearings held on 1/28/09, 2/27/09 and 4/27/09 (Google Whitman Walker Clinic City Council Hearings). The allegations against the Plaintiff and the Community-based provider Miracle Hands were ongoing during that time and the plaintiff asked her supervisor Gunther Freehill "if he would request that a hearing be held to address all of the allegations to no avail".

Gunther Freehill told the Plaintiff one morning that he had watched the movie "Hustle and Flow" and addressed the Plaintiff as "hey hoe" ever since. He also addressed other African American females under his supervision the same way. There was blatant discrimination that the Plaintiff could prove during discovery. He was so intent on impressing David Catania that any attempts for resolution under his leadership were futile.

The Plaintiff was not aware that there was no constitutional protection for the interest in reputation. She did retain an attorney in May 2008 that she paid $5,000 to represent her in all of these matters. (see exhibits 3,4,5 &6)

**B. Response to Plaintiff's 42 U.S.C. § 1983 Claim Is Barred by the Statute Of Limitations As Plaintiff's Complaint Was Filed More Than Three After the Events Alleged.**

The Plaintiff retained an Attorney-Gregory Lattimer in May 2008 to represent her in these matters.  The District of Columbia Bar will begin prosecution proceedings against him on May 6 regarding his lack of due diligence on the Plaintiff's behalf.  See Exh. 3,4,5&6), Decision and Award (Attorney/Client Arbitration Award) –Lattimer Complaint DC Bar –Specification of Charges (dates are incorrect and being amended-events began May 2008 thru 2010)

## II. PLAINTIFF'S RESPONSE TO PLAINTIFF'S CONSTITUTIONAL DEFAMATION CLAIM FAILS AS A MATTER OF LAW

The Plaintiff retained an Attorney-Gregory Lattimer in May 2008 to represent her in these matters.  The District of Columbia Bar will begin prosecution proceedings against him on May 6, 2012 regarding his lack of due diligence on the Plaintiff's behalf.  See Exh 3, Decision and Award (Attorney/Client Arbitration Award) –See Exh. 4-5 Lattimer Complaint DC Bar –See Exh. 5 Specification of Charges (dates are incorrect and being amended-events began May 2008)

**A. Plaintiff Response to Plaintiff Fails to Adequately Plead A Constitutional Defamation Claim**

The Plaintiff, having to represent herself pleads this complaint as she knows and lives it. The Plaintiff asserts that "the proof is in the proof" and hopes that the court will allow discovery

of the facts.  The plaintiff has been deprived of life, liberty and property as a result of the continued slander of the defendants.

### B. Plaintiff Response to Plaintiff's Constitutional Defamation Claim is Barred By the Statue of Limitations

Here, the Defendant's reference (Complaint ¶42).  As stated previously, all of the events from 2004 to 2008 were written to provide the court the background for David Catania's vendetta against the plaintiff.  The complaint is focused on the on-going slander and vicious vilification inflicted by David Catania and Gunther Freehill via email and media (thru Defendants Freeman Klopott and Jeffrey Anderson) alleging her "another awful legacy and approving funds for a strip club when they knew for a fact that the allegations were not true. (See Exhibit 1).  Exhibit one (1) is written by an HAA official and where he states "he has had to answer this question a million times to HUD, HRSA,etc)", it is the Plaintiff's contention that he did not answer this question a million time in only six (6) months.

In addition, the complaint is not time barred as the last statement from David Catania was made on August 9, 2011. (¶47) and retaliatory postings were placed online in November 18, 2012 after this complaint was electronically posted by the court on November 1, 2012.

### III. Plaintiff's Response to Plaintiff's Intentional Infliction of Emotional Distress Claim, Count III, Fails As A Matter of Law

The Defendants state: "Plaintiff's intentional infliction of emotional distress claim against the District fails as a matter of law because 1) plaintiff failed to give the District notice of the claim as required by D. C. Code 12-309, and 2) the claim is barred by the statute of limitations.

The Plaintiff on today, April 6, 2012 has submitted an amended complaint to the court naming David Catania personally as a defendant and Gunther Freehill personally and under his color of law duties for the District Government.  The Plaintiff also today, April 6, 2012 submitted a letter to the District in accordance with D. C. Code 12-309 giving notice that she is filing a complaint with the U. S. District Court against Defendants David Catania, Gunther Freehill (District Employee) Jeffrey Anderson and Freeman Klopott.  The Plaintiff had a prospective attorney to review the retaliatory postings placed online in November 2012 under her name with captions underneath that read "Latest News and Commentary on Debra Rowe including photos, videos by the U.S. Attorney's Office, The F.B.I. and the Attorney Generals Office" after she telephoned the Judge's Chamber about it.  The Plaintiff is within the six (6) months of November 2012 to provide her notice to the District.  Exhibit one (1) substantiates the **"intentional infliction of emotional distress claim"**.  The District and David Catania have known all along that the allegations were not true.

The Plaintiff also needs for the court to be apprised of the "fact' that the newspaper reporters had not been served in November, yet these postings appeared altogether under her name.  You Google Debra G. Rowe in DC and you get all of the articles now lumped together as of mid November 2011.

### Plaintiff's Response to the Actions Plaintiff Alleges Support Her Claim Occurred Outside the Statute of Limitations

The Defendants state: "In this case, the claims in plaintiff's Complaint are "intertwined" with a theory of defamation". (please see Exhibit 1 to support plaintiff's "theory").  The Plaintiff is within the one-year limitations period for defamation actions as several slanderous and defamatory articles were published during the year 2011.

The Defendants further state 'to the extent plaintiff attempts to make an intentional infliction of emotional distress claim against the District here, the substance of the claim arises from plaintiff's allegation that the defendants intentionally inflicted emotional distress upon her by "launching criminal investigations to destroy her reputation." (¶ 77) However, the Complaint does not show that the District, or any employees thereof, initiated any investigation against plaintiff on a date within three years of the date on which the plaintiff commenced this lawsuit (November 1, 2011), i.e. the three year statute of limitations period. (Complaint ¶¶ 9-60, 76-80)

The FBI, Inspector General and other investigations have been over and re-launched at least three (3) times during the last three (3) years. The Plaintiff is almost sure of who launched the investigations but does not have the means to confirm. Perhaps the court can inquire?

## IV. Plaintiff's Response to This Court Should Decline to Exercise Jurisdiction Over All Of Plaintiff's Claims

The Plaintiff is insulted that the Defendants would compare her case to *District of Columbia v. Thompson*, 593 A.2d 621 (D.C. App.1991). "The Court found that Ms. Thompson's "tort claims of defamation and intentional infliction of emotional distress---arose out of disputes with her supervisor—that clearly fall within the scope of the CMPA....." *Id.*

The Plaintiff re-pleads the following:

1.  On August 9, 2011, the Defendant 1, during normal business hours as part of his official and under color of law duties issued a statement to the public and to the media that made false defamatory statements about the Plaintiff. The Defendant stated that: "The audit by the D.C. inspector general "is sadly just another documentation of the legacy of Debra Rowe," D.C. Councilman David Catania said in a statement to The Washington Examiner

on Tuesday". Jonathan Alston, The Chief of Grants Management at DOH/HAA was fired
on August 10, 2011. Plaintiff asserts and can prove that the legacy belonged to Mr.
Alston and the DOH/HAA Grants Management Division.

2. Defendant 1 made the public statement about Plaintiff even though he knew without a
doubt the person responsible for the audit findings. The new HAA Senior Deputy (Dr.
Pappas) dismissed that person (Jonathan Alston) the following day and no public
retraction of statements were made on Plaintiff's behalf.  Upon information and belief
Jonathan Alston was a long-time cohort and informant of Defendant 1.

3. Each of the Defendant's statements has been reckless and defamatory over the years. The
Defendants were legally at fault in making the statements. Defendants did not have any
factual basis or knowledge to support the false statements.

4. In the alternative, Defendants 1,3,&4 negligently published false and defamatory
statements about Plaintiff that were reckless and suggested that Plaintiff was dishonest,
and terminated for reasons related to performance and Defendant 2 promoted the
statements among Plaintiffs former and present colleagues.

5. Defendants acted with knowledge of the falsity of the statement and with the intent to
harm Plaintiffs' reputation and standing both in the community.

6. Defendant's false statement exposed Plaintiff to public scorn, hatred, contempt or
ridicule, thereby discouraging others in the community from having a good opinion of,
employing, or associating with Plaintiff.

7. As a result of the false and defamatory statement published by Defendant, the character
and reputation of Plaintiff was harmed, Plaintiffs standing and reputation in the

community was impaired, and Plaintiff suffered mental anguish, stress related heart attack, humiliation and economic loss.

### Plaintiff's Conclusion

The Attorney General for the District of Columbia's statements in regards to their motion to dismiss are indicative of the culture of the relationships in the District of Columbia.  The Attorney General's office knows very well that the Plaintiffs allegations are true as they have another lawsuit pending related to her complaint.  The Plaintiff can provide documents, witnesses and depositions to support her complaint.  In light of the fact that the attorney she had retained let her down and repaid her in spurts, she was unable to retain another to represent her in this matter which has extended from April 2008 when she was dismissed from her job. The Plaintiff will ensure that she "exhausts all administrative remedies".  She has no choice as all of the defendants have contributed to leaving her barren.  The Plaintiff came to this court seeking justice as many have participated in their cover up.

Respectfully submitted,

Ms. Debra G. Rowe, M.H.S.
Plaintiff

### Certificate of Service

I certify that a copy of the *pro se* Plaintiff's Opposition to the Defendant's Motion to Dismiss was mailed to the defendants on this 6th day of February 2012, at the address set forth below, via first class US Mail:

Steven J. Anderson
Assistant Attorney General
441 Fourth Street, N. W.
Washington, D. C.  20001

**From:** ██████████████████
    **To:** dbrrowe <dbrrowe@aol.com>
**Subject:** Miracle Hands
    **Date:** Wed, Apr 4, 2012 10:02 pm

---

**From:** Whitt, Terri A
**Sent:** Monday, April 02, 2012 4:06 PM
**To:** Yusuff, Mohamad (OCFO)
**Subject:** Miracle Hands & HOPWA

Hi, Mohamad-

I am the manager over the HIV programs.  We are currently looking into the situation involving Miracle Hands and opening a night club with District funding using HOPWA funds.  Did your office receive any referrals or were aware of this situation by any chance?  If so, do you have any reports or information you can provide about it?

Thanks,

*Terri Whitt*

Manager

KPMG LLP

1801 K Street NW


**From:** Popat, Sajeed (DOH)
**To:** Fletcher, Keith (DOH)
**Sent:** Tue Apr 03 10:01:13 2012
**Subject:** Re: Miracle Hands & HOPWA

Hi Keith,

Yes, we've answered this a million times for HRSA and HUD. District funds NEVER went to a strip club. The building was to be used for job training, but the owner sold it to a guy that started a strip club at that same site. Later, when all this was uncovered, DOH failed to take the address down from our website, so we were directing people to the strip club for job training, accidentally.

I'm stuck in the DMV line right now, but I can send more when I get in. Also, Gunther has all the specifics as well.

They really can't let this one go. Main point, no federal or Local funds went to a strip club for Miracle Hands.

Thanks for the heads up,
Saj

Ms. Rowe,
I understand that the court has granted the consent motion to quash service of the complaint on Mr. Catania, but I have
not heard from you since this earlier communication. I am still available to accept service. Thanks.
Regards,
Dave

V. David Zvenyach
General Counsel
Council of the District of Columbia
(202) 724-8026

**From:** ........ [.......... ...... .....]
**Sent:** Friday, January 06, 2012 8:04 AM
**To:** Zvenyach, Vladlen David (Council)
**Subject:** Re: Rowe v. DC et al

Good Morning Mr. Zvenyach,

I apologize for not making it to your office yesterday. I was running late and did not have time to complete and print out the
Affadavit of Service. You will recieve it early this afternoon.

Thank you,

Ms. Debra G. Rowe, M.H.S., C.C.H.P,

-----Original Message-----
From: Zvenyach, Vladlen David (Council) (Council) <........ ..... ..... ..... .....>
To: dbrrowe <..... ..... ..... .....>
Sent: Thu, Jan 5, 2012 7:49 pm
Subject: Rowe v. DC et al

Ms. Rowe,
Following up on our conversation this morning, I am available to accept service on behalf of Councilmember Catania
tomorrow, or at a future time that is convenient. I'm sorry that we were not able to meet this afternoon. As discussed, I
am filing a consent motion to quash the earlier service of process (attached) tomorrow morning. Once service is
accepted, we will respond to the complaint. Feel free to call me on my cell phone 202-340-7335 if you have any
questions. Thanks again.
Best Regards,
Dave

V. David Zvenyach
General Counsel
Council of the District of Columbia
(202) 724-8026

**From:** Zvenyach, Vladlen David (Council) (Council) <vzvenyach@DCCOUNCIL.US>
   **To:** dbrrowe <dbrrowe@aol.com>
**Subject:** RE: Rowe v. DC et al
   **Date:** Fri, Jan 20, 2012 3 11 pm

Thanks.
Dave

V. David Zvenyach
General Counsel
Council of the District of Columbia
(202) 724-8026
.   .    .    .   .

**From:** .    .   .   .   .   . [      .    .    .    .   ]
**Sent:** Friday, January 20, 2012 3:10 PM
**To:** Zvenyach, Vladlen David (Council)
**Subject:** Re: Rowe v. DC et al

Okay Sir- I need to check with the clerk's office again because as you know I filed my complaint Pro Se and I do not want to
make any mistakes.

Ms. Debra G. Rowe, M.H.S., C.C.H.P,


-----Original Message-----
From: Zvenyach, Vladlen David (Council) (Council) < .   .   .   .   .   .   .   .   . >
To: ' .   .   .   .   . ' < .   .   .   .   .   . >
Sent: Fri, Jan 20, 2012 12:19 pm
Subject: Re: Rowe v. DC et al

Ms. Rowe,
Thanks for the email. The Attorney General is not authorized to accept service on behalf of Councilmember Catania. I am
authorized to do so, and will accept service on his behalf.
Regards,
Dave

**From:** .   .   .   .   .   .   .
**To:** Zvenyach, Vladlen David (Council)
**Sent:** Fri Jan 20 11:23:36 2012
**Subject:** Re: Rowe v. DC et al
Hello Sir,

I was informed by the District Court's Clerk and recieved notice via mail that the motion was granted by the judge "in part"
and that another summons was served on the District correctly on January 5. I was telephoned by Attorney Nathan's office
yesterday by a Pro Bono attorney that has breen assigned requesting more time which I agreed to even though this is second
time I have received the request.

I apologize, I thought that you were aware of these updates.

Ms. Debra G. Rowe, M.H.S., C.C.H.P,


-----Original Message-----
From: Zvenyach, Vladlen David (Council) (Council) < .   .   .   .   .   .   .   .   . >
To: dbrrowe < .   .   .   .   .   . >
Sent: Fri, Jan 20, 2012 9:49 am
Subject: RE: Rowe v. DC et al



DEC 1 5 2011

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

RECEIVED

DEC 1 4 2011

Board on Professional Responsibility

|  |  |
|---|---|
| In the Matter of | : |
| | : |
| GREGORY L. LATTIMER, ESQUIRE, | : |
| | : |
| Respondent | : |
| | : |
| Member of the Bar of the District of | : |
| Columbia Court of Appeals | : |
| Bar Number: 371926 | : |
| Date of Admission: July 5, 1983 | : |

Bar Docket Nos. 2009-D170,
2009-D319, 2010-D401

## SPECIFICATION OF CHARGES

The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by Rule X of the District of Columbia Court of Appeals Rules Governing the Bar.

Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar Rule XI. Pursuant to D.C. Bar Rule XI, §1(a), jurisdiction is found because:

1.    Respondent Gregory L. Lattimer was admitted to the District of Columbia Bar on July 5, 1983 and assigned bar number 371926

### A.    Roderick Strange

2.    Roderick Strange was convicted of several felonies in the Superior Court for the District of Columbia in 2007. He was sentenced to prison in 2008.

about the status of the matter and failed to comply promptly with reasonable requests for information.

**B.    Debra Rowe**

17.    In May, 2009 Debra Rowe retained Mr. Lattimer to represent her in an employment matter adverse to the District of Columbia.

18.    Mr. Lattimer drafted and Ms. Rowe executed an Agreement of Retainer pursuant to which Ms. Rowe was to pay Mr. Lattimer a non-refundable fee of $6,000 plus a contingency fee of 33 percent of any amount recovered in excess of $6,000.

19.    Because she was unemployed, Ms. Rowe and Mr. Lattimer agreed that she could pay $2,500 initially and then $500 every two weeks.

20.    After retaining Mr. Lattimer, Ms. Rowe attempted to call him on several occasions. His office manager would not put the calls through, and Mr. Lattimer failed to return her calls.

21.    Because she was unable to reach him by telephone, in August, 2009 Ms. Rowe insisted on a meeting. At that meeting she explained the difficulty she was experiencing in reaching him by telephone and the reasons why she needed to speak with him. Although she had only paid $4,000 on her retainer, Mr. Lattimer agreed to begin working on her case. Ms. Rowe believed that the statute of limitations on some of her potential claims would run in about six months.

22.    Following this meeting, however, Ms. Rowe again found it impossible to reach Mr. Lattimer by telephone.

4

23.    In early 2010 she was again able to schedule another meeting with Mr. Lattimer. At that meeting she expressed her concern that the statute of limitations might be expiring on her whistle-blowing claims.

24.    Still unemployed and facing foreclosure on her home, Ms. Rowe was forced to file for bankruptcy. Before doing so, she sought to consult with Mr. Lattimer to see if there would be any effect on her case. Mr. Lattimer, however, would not take her telephone calls. She filed for bankruptcy without obtaining his advice.

25.    In about February 2010, because she was not having her calls returned and because she was concerned about the statute of limitations, Ms. Rowe informed Mr. Lattimer's office that she was discharging him. However, after speaking with the lawyer who had referred her to Mr. Lattimer, she agreed to continue with Mr. Lattimer as her lawyer. She was also able to pay Mr. Lattimer an additional $1,000, bringing the total to $5,000.

26.    After she paid this additional sum, she was able to speak with Mr. Lattimer. He told her that he would not prioritize her case because she had not yet paid the full $6,000.

27.    In April, 2010 Mr. Lattimer telephoned Ms. Rowe to inform her that he had decided not to file the whistle-blower claims for which the statute of limitations was about to expire or had expired. He said that he intended to file other claims, which he believed were better.

28.    In late April, 2010 Ms. Rowe was being considered for a job with the District of Columbia. She wanted to communicate this to Mr. Lattimer but could not reach him by telephone. She emailed him the information. He then telephoned her and recommended that the lawsuit be deferred until her employment was resolved.

5

29.     About three weeks later Ms. Rowe determined that she would not receive the job offer. She attempted to telephone Mr. Lattimer to inform him of that fact but could not get through to him or get him to call her back. She was able to inform his office manager.

30.     In the month of June, 2010 she attempted to telephone Mr. Lattimer on more than one occasion to urge him to file her case but was again unable to speak with him or get him to return her calls.

31.     On July 14, 2010 Ms. Rowe emailed Mr. Lattimer and discharged him. She asked for her file and the reimbursement of the $5,000 she had paid him. She followed up with a telephone call but was told that Mr. Lattimer was not available. She was able to speak with the office manager who ultimately told her that she could pick up the file and that half of her retainer or $2,500 would be refunded.

32.     Respondent Gregory L. Lattimer's conduct violated Rule 1.4(a) of the District of Columbia Rules of Professional Responsibility in that he failed to keep his client reasonably informed about the status of a matter and failed to comply with reasonable requests for information.

**C.    Toby Cooper**

33.     Toby Cooper brought a pro se civil rights action in state court in Loudoun County, Virginia. In December, 2009 she voluntarily dismissed or "non-suited" her case. Under Virginia rules she had six months to re-file the case, which she calculated would expire on June 4, 2010.

34.     In May Ms. Cooper contacted Mr. Lattimer, who told her that he would represent her.

35.     After June 4, 2010 Mr. Lattimer contacted her and explained that he had decided not to re-file the case in state court, but to file it in federal court in the Eastern District of Virginia. He

6

45.     On September 22, 2010 Ms. Cooper sent Mr. Lattimer an email discharging him. She asked him to refund the $5,500 that she had paid him. Mr. Lattimer responded with an email in which he refused to refund the "engagement fee." Upon her subsequent request, he forwarded her file to her.

46.     Respondent Gregory L. Lattimer's conduct violated Rule 1.4(a) of the District of Columbia Rules of Professional Responsibility in that he failed to keep his client reasonably informed about the status of her matter and failed to comply with reasonable requests for information.

Respectfully submitted,

Wallace E. Shipp, Jr.
Bar Counsel

Hamilton P. Fox, III
Assistant Bar Counsel

OFFICE OF BAR COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

9

FROM THE DESK OF.....

Ms. Debra G. Rowe, M.H.S.
5907 Federal Court
Upper Marlboro, MD  20772
(301) 927-0324

August 3, 2009

District of Columbia Bar
1101 K Street, N. W.  Suite 200
Washington, D. C.  20005-4210

To Whom It May Concern,

On May 20, 2008 I retained Mr. Gregory Lattimer to represent me because I was fired
from my job on April 23, 2008 for whistle blowing.  The whistleblower incident took
place February 2007.  I had met with Mr. Lattimer a week earlier for a consultation that I
paid him $200 for as I was referred to him by Attorney Donald Temple who I had also
had a paid $200 consultation fee.  Mr. Temple informed me that "he was very busy, but
that he highly recommended Mr. Lattimer to take my case".  As a result of the pressure
placed on me as a result of whistle blowing, while I was still on that job, I had suffered a
heart attack on January 6, 2008 and was hospitalized with surgery. I was fired from my
job as The Chief of HIV Housing and Department of Corrections Liaison effective April
23, 2008. The person that I whistle blew against was a D. C. City Councilman who
afterwards placed allegations in the community that led to me being investigated by the
F. B. I. with my home raided, rumors placed in the community that I was arrested and
this was used to justify my firing, even though I was never charged with any wrongdoing.

Mr. Lattimer charged me a $6,000 retainer fee, that although I was unemployed I paid
him a $2,500 down payment and increments of $500 every two weeks until I had paid
$5000.  For the duration of the year 2008 I made several attempts to speak with Mr.
Lattimer to no avail.  For several weeks, every attempt that I made to make contact with
Mr. Lattimer was thwarted by his office manager Ms. Imani Berk.  I was very frustrated
about not being able to speak with Mr. Lattimer and on several occasions telephoned Mr.
Temple to intervene.

One day I insisted on a meeting with Mr. Lattimer through Ms. Berk because everytime
that I called she would say that "he was in a consultation and would be about an hour",
but when I would call back there would be another reason for me not to speak with him. I
informed her one day that I was going to "come down to the office" and she told me that
"I would not be able to get in".  I had a friend listening in on that conversation and my
friend witnessed the evasive and disrespectful tone of Ms. Berk.  After insisting on

meeting with Mr. Lattimer I was finally able to see him early during the month of August 2008. I told him about the problems that I was having trying to reach him and he of course defended Ms. Berk. I told him of the hardships I was enduring due to my loss of employment and evidence that I had provided to him where I was "blackballed" from obtaining employment at another agency that I also produced evidence of their attempt to hire me. When I had explained my need to speak with him due to my mounting hardships Ms. Berk replied "well you have a year". During the August meeting Mr. Lattimer asked me "how much had I paid his office?" I informed him that I had paid $4,000. He asked me "against what" and I told him "against $6,000". He clearly had not set my retainer fee. He then told me that "August and September was a slow time for the courts" and he said "Ms. Rowe, I will file case". I left that day with more confidence in his counsel but everything reverted back to the lack of communication.

The next meeting that I was able to get with him was early 2009, and I took a friend with me to that meeting to witness the exchange and he again committed to get started as the Statutes of Limitations for Whistleblower was near as it related to my case. I asked my friend "what did he think and he replied that he thought that he would get it done" based on the conversation.

We again reverted back to the lack of communication. I was at the point where I wanted my file and retainer returned and I requested a meeting with Mr. Temple to consult with him about it and to see if he would represent me. Mr. Temple had me to come in and meet with him and "told me that I needed to understand that Ms. Berk was Mr. Lattimer's wife and she would be protective of him and his schedule". He also told me that Mr. Lattimer was the best attorney to represent my case as it was against the District Government. Mr. Temple on that same day wrote an email to Mr. Lattimer on my behalf in my presence and told me to try and make another payment and give Mr. Lattimer a thank you card to try and better the relationship. I followed Mr. Temple's recommendation and took the card and the payment which got me to $5,000 against my retainer. Mr. Lattimer did inform me that he would not prioritize my case over fully paid clients, but he was the one who had told me in August that he would file.

In January 2009, I was facing foreclosure on my home and repossession of my car, and other possessions so I had to file bankruptcy. I tried to contact Mr. Lattimer to inform him of my decision to no avail. When I finally did speak with him (around mid February) and told him about the bankruptcy he stated that "my filing was a problem". I told him 'that I had tried to consult with him about it, but he never returned my calls, (if Ms. Berk gave him the messages)". He then told me that I needed to "disclose my potential lawsuit to my bankruptcy attorney and for me to give the attorney permission to speak with him, which I did do. My bankruptcy attorney was able to get me three (3) continuations with the court so that I could produce the filing, but it never happened.

During the month of April 2009 Mr. Lattimer telephoned me after I had left him a telephone message and informed me that "he was out of the country, but that he had my file with him". He then informed me that "he was not going to file under whistleblower

because he did not like the statutes". In reality though, my time to file had expired during that month. He told me that "he was going to file under wrongful dismissal because it would give him better results". I continued to provide him with developing information relevant to my case and would check in to see if he had filed and again I could not get a definitive response as I still had to go through Ms. Berk. When I was able to talk to him I informed him that I was recommended to the Mayor's office for a position and that they had called me in for an interview on April 27, 2009. He informed me of a dilemma which according to him was that I was suing the District, so he recommended that we wait to see if I would get the job, and he would file afterward. After about three (3) weeks I informed Ms. Berk (because I was unable to speak to Mr. Lattimer) that I did not think that I would get the job so would he please file my case.

It is now July, but during the month of June I explained that the filing of my case would help me with my living situation as I am now renting a home that my landlord wants to sell. I explained to Ms. Berk how imperative the filing was for me being borderline homeless and my need to present it for my bankruptcy. She told me as always "that she would let Mr. Lattimer know". Last week on July 14 I wrote an email to Mr. Lattimer and requested my file and retainer reimbursement because I desperately needed legal counsel. I followed up with a telephone call on that Monday, but no one was in the office, and the receptionist told me of her concerns "that I was the 7th caller that day and the Lattimer's had not informed her that they would be out". When I did reach Ms. Berk that Tuesday and asked "if they had read my email" she replied that they had, and that I could get my file, but no refund of my retainer". I told her of my concerns regarding his not filing and that I needed it to retain other counsel and she told me that I may be able to get half of a refund". She also reminded me that I had them to "hold off for three weeks" (which was his advice), and I asked her "what did three (3) weeks matter out of 15 months? She also told me that "she needed a couple of days to retrieve my file from another floor due to some renovations being done in their office". I know that they have been renovating for a couple of months so in essence my file was not even with them during that time. When I called back she told me that "Mr. Lattimer had signed a check for $2,500 and that I could pick that up and my file". I had asked for an accounting of what he had done and she told me that "she did not have it but would try to get it".

When I retrieved my file there was an accounting that I have attached to this complaint and I question the hours that are documented because my file does not contain any notes and if the research was done as stated on the sheet what kept him from filing my case? I had informed him of several persons who were prepared to provide depositions on my behalf, but absolutely nothing has been done.

Sir or Madam, you do not know the stress that this relationship has caused me and how much it has compounded my cardiovascular problems and my livelihood. My cardiologist had even offered to assist Mr. Lattimer, (by providing documentation of the impact on my health) but he told me "that it was not necessary". I would have felt better if he would have at least filed my case. I am now without counsel as $2500 it not enough for a retainer and I have pressing bills that I need to pay. I am always very embarrassed when asked by family and friends "how is my case going? I am embarrassed because I

have sung his praises due to what Mr. Temple told me about his ability.  I do plan to file a civil suit against Mr. Lattimer through the District court system.

Is it common practice for an attorney procrastinate in this way?  Why wouldn't he just pass my case to someone else or just withdraw?  I now find myself needing to seek justice for this matter as the other may be lost.


Respectfully submitted,

*Ms. Debra G. Rowe*

Ms. Debra G. Rowe, M.H.S.

*From the Desk of ..........*
*Ms. Debra G. Rowe, M.H.S., C.C.H.P.*
*5907 Federal Court*
*Upper Marlboro, MD  20772*
*(301)-952-0277*
*Debrawe1area1.mener*

Thursday, August 27, 2009

Gayle Marie Brown Driver
Assistant Bar Counsel
515 5th Street, N.W.  Room 117
Washington, D. C. 20001

RE: <u>Lattimer/Rowe</u>
     Bar Docket No. 2009-D319

Dear Mrs. Driver:

This letter is in response to Attorney Lattimer's explanation regarding the complaint that I have filed with the Office of Bar Counsel. First, I want to thank your office for looking into this matter. Mr. Lattimer did meet with me but he did not say that the "unresolved criminal matter presented a problem". What he did state was that "he needed to speak with the attorney representing me with the matter (Robert Mance) and that "he would telephone him. During the other two (2) meetings that we had Mr. Lattimer would again say and jot down on his paper "that he needed to telephone Mr. Mance" which he never did. I informed him that I was never arrested and Mr. Mance did not think that the investigation would result in an arrest. As a matter of fact, I informed Mr. Lattimer early this spring that I was told unofficially that the investigation was closed by another person that was involved. I was officially informed just last week by Mr. Mance that he had been contacted by an agent representing the Federal Bureau of Investigations that my case is closed and that I can retrieve all items taken from my home by making an appointment this week.

Mr. Lattimer also addressed the fact that I was slow in paying his retainer fee, but I was in contact via Ms. Berk to explain my financial situation which at the time was the fact that I was unjustly fired, received a severance pay for a short amount of time, and my health benefits were cut off. I was still obligated to mortgage, car and other loan payments. I also informed their office that my former employer for a while "held up" my unemployment benefits by not responding to the Department of Employment Services in a timely matter. These circumstances were dire in light of the fact that I had suffered a heart attack and was, and still am required to take seven expensive medications a day that I had to pay out of pocket for to survive. To date my specialty and primary coronary physicians still see me once every six (6) months (specialty) and once every six (6) weeks (primary) due to the seriousness of my condition regardless of my ability to pay. I am unable to pay for the laboratory test needed every 12 weeks due to the fact that one (1) of

my medications can "wipe out" my liver and one of them can "wipe out" my kidneys as I was informed by my primary physician. As I stated in my first letter to your office, my physicians offered to provide Mr. Lattimer with relevant documentation as stress from the situation at my job was a factor in my condition.

That was one of the reasons for my meeting with Mr. Lattimer in August 2008 where he told me that "he would file and proceed with my case". I will now address Mr. Lattimer's explanations paragraph by paragraph:

Page 1 paragraph 1

To my knowledge (and I may be mistaken) I signed the initial agreement. I have no knowledge of a revised retainer agreement.

Page 1 paragraph 2

If needed, I will obtain my telephone records to show that Mr. Lattimer never returned my calls and all communication was via Ms. Berk (and she never called me back I always had to telephone he). My telephone calls were to inform Mr. Lattimer of developments related to my case which were ongoing.

Page 1 paragraph 3

I did not "threaten" to come to Mr. Lattimer's office without an appointment. Ms. Berk kept telling me for hours that "Mr. Lattimer was in consultation and I really needed to speak with him and this conversation took place a year after my retainer and I had a witness listen on the phone based on the interactions between myself and Ms. Berk. Sure enough, she treated me the same as always with indifference and my friend Carita Smith an employee of Deloitte Touch overhead the conversation. I asked her to listen because I was not sure that Mr. Lattimer was aware of her behavior although I had informed him of my concerns during our August 2008 meeting. He did not respond just as his explanation to your office makes no mention of these concerns that I had also addressed to you.

Page 1 paragraph 4

I have never, ever introduced Mr. Cornell Jones to anyone at anytime as a D. C. Drug Kingpin and Mr. Lattimer was the one that said "that he knew him from somewhere". I did tell him that he was featured the television show only because of the relevance to my case to which he replied "that is where I know you from, I was up until 3 a.m. watching that show-wow! I have to watch it again". The reason that this was relevant is because both myself and Mr. Jones have publicly spoken out against the city councilman who ordered the investigation against us to divert attention away from the matter that I addressed to Congresswoman Eleanor Horton. I have attached the written allegation that was used to pursue the investigation that was sent at near midnight the night before my letter to Congresswoman Norton was sent due to the fact that the councilman was informed of my intent to whistle blow. Mr. Lattimer upon our first meeting informed me

of his prior position under the D. C. Corporation Counsel as a judge that overheard employee grievances and told me that "in all of his 20 years of serving he had never seen anything like what was written on that email committed to paper". He went further to state that "he had to read it nearly ten (10) times to believe what he was seeing"  This email which I have enclosed for your review was put under the doors and placed in the cubicle seats of each of my co-workers a couple of days after my letter was sent to the Congresswoman.  That was the very first act of defamation of my character and retaliation initiated by the city councilman. One of the ladies who initiated the email admitted to me that she was asked to write it and apologized for doing so without knowing all of the facts. I am saddened to experience more defamation coming from him, and Mr. Jones is also concerned about that statement.  In my complaint to your office I could have acknowledged the fact that he has received an admonishment for procrastination before in a case, but I didn't. During this particular meeting Mr. Jones explained how both of our pasts were being used to harm us as we both are formerly incarcerated individuals even though we both have been back in our communities for nearly two (2) decades and have "given back" tremendously.  In spite of my current circumstance I work each and everyday voluntarily to advocate for underserved populations.

Page 2 paragraph 1

Mr. Temple sent Mr. Lattimer an email while in my presence. I **never** pleaded with Mr. Lattimer to not return my file.  I simply followed Mr. Temple's direction and sent the thank you card with another payment that I borrowed from my Godmother Dr. Julia Barra and "kissed up" to Ms. Berk!

Page 2 paragraph 2

Mr. Lattimer could not have known about my bankruptcy filings because he never returned my calls, and I truly do not believe that Ms. Berk was delivering my messages. My bankruptcy counsel is very detailed and was waiting for Mr. Lattimer to do whatever they discussed.  I will not go back and forth on this issue as I am being truthful and again I should not have to experience more defamation as it seems that Mr. Lattimer is trying to paint a picture of me as a "basket case".

Page 2 paragraph 3

Mr. Lattimer missed the deadline for the Whistleblower filing.

Page 2 paragraph 4

I had on several occasions while trying to reach Mr. Lattimer via Ms. Berk to inform him that other victims of my former agency had settled their cases. The only illusion that I had was my confidence in him to seek justice on my behalf.

Page 3 paragraph 1

I did request my file and I expressed to Mr. Lattimer that I was concerned about statues of limitations on what he led me to believe could still be filed under "wrongful dismissal". What work performed is Mr. Lattimer referencing?  The accounting that I was given upon request is a list of legal topics and fees.  Where are the notes?

I was blessed to have a supervisor (Marie Sansone) who also happened to be an attorneys' protection for a few months after the FBI began their investigation.  Mr. Lattimer never contacted her for very vital information that she could have provided to him. I am at a lost because all other counsel that I have reached out to have stated that "mine is a whistleblower case".  I provided Mr. Lattimer with a lot of solid documentation to support my case even the posting of my position while I was still on the job.  I even provided evidence of another D. C. agency's attempt to hire me and how it was blocked by a veiled threat at the behest of the councilman.  There is an email to prove it that he could have issued a subpoena for as I know the date that it was sent.  In essence, I have been blackballed even though several agencies that I have enjoyed an excellent collaborative rapport with were interested in my hire. I have suffered the lost of a substantial income, my home, my car, my professional career/character and possibly my liver and/or kidneys.  I hope that your office can ensure that no one else has to experience this lack of communication after retaining him.  My case was put on the back burner.  Maybe at a minimum you can have him to state on his website "if yours is not a high-profile case-need not retain".

Sincerely,

*Ms. Debra G. Rowe*

Ms. Debra G. Rowe, M.H.S., C.C.H.P.

Enclosures



D I S T R I C T   O F   C O L U M B I A   B A R
*Attorney/Client Arbitration Board*

March 21, 2012

**CONFIDENTIAL**

Ms. Debra Rowe
P.O. Box 275
Upper Marlboro, MD 20773

Re:    ACAB # 2009-10/018                    Rowe/Lattimer

Dear Ms. Rowe:

Per your telephone request on March 20, 2012, enclosed is a copy of the Decision & Award from the above referenced case.

Sincerely,

Stephanie Gorman

Stephanie Gorman
Sr. Administrative Assistant, Attorney/Client Relations Program

Enclosures as stated



D I S T R I C T   O F   C O L U M B I A   B A R

*Attorney/Client Arbitration Board*

## DECISION & AWARD

**Rowe/Lattimer        ACAB# 2009-10/018**

Pursuant to notice to all parties, the undersigned Arbitrator(s) assigned to the above cited fee dispute by the District of Columbia Bar Attorney/Client Arbitration Board met on the 24th day of June 2010 at 1101 K Street., N.W., Washington, D.C. to take evidence and hear arguments in this matter.

The parties to this dispute, Ms. Debra Rowe and Gregory Lattimer, Esq., appeared personally before the undersigned Arbitrator(s).

The Request for Arbitration, between Ms. Debra Rowe, as petitioner and Gregory L. Lattimer, Esq., as respondent, sought the following relief:

Petitioner sought $2500.

After consideration of the evidence and testimony presented, the undersigned Arbitrator(s) reached, and hereby affirm(s) the following decision and award:

Respondent shall refund Petitioner $1200 within 30 days

Terms of award to be completed by (date): July 24, 2010

Judge Muriel Aikens Arnold

Date: 6\24\2010

*1101 K Street NW, Suite 200, Washington DC 20005-4210 ▪ 202-737-4700, FAX 1-866-550-9330, www.dcbar.org*

*From the Desk of ……….*
*Ms. Debra G. Rowe, M.H.S., C.C.H.P.*
*5907 Federal Court*
*Upper Marlboro, MD  20772*
*(202)-437-3439*
*dbrrowe@aol.com*


April 6, 2012

Mayor Vincent Gray
c/o Office of Risk Management
Tort Liability Division
1350 Pennsylvania Ave NW
Washington **DC** 20004

Dear Mayor Gray,

On or about November 18, 2011, David Catania and Gunther Freehill knowingly and willfully
slandered and initiated various defamatory tactics against me that have led me to file an official
complaint against them and two (2) newspaper reporters (Freeman Klopott and Jeffrey
Anderson) in the U. S. District Court.  I was just notified by the District's Motion to Dismiss my
initial complaint that I was not in compliance with §12-309 of the D. C. Code.

As the defendants retaliated after my complaint was filed on November 1, 2011, I am submitting
this notice now as I have had to amend my complaint to sue David Catania personally The
District employee initiated these acts in his official capacity as the Bureau Chief of HIV Support
Services for the HIV Administration under the Department of Health.

Respectfully submitted,

Ms. Debra G. Rowe, M.H.S.